UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TUNC URAZ,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
TREASURY et al.,

               Defendants.
_____/

Case No. 1:20-cv-1219

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint as frivolous.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred while Plaintiff was confined at that

facility and the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan.  Plaintiff sues the Michigan Department of Treasury.

Plaintiff alleges that he has been incarcerated since 2016.  Prior to his incarceration, Plaintiff was employed by Michigan State University for 25 years.  Plaintiff states that the issue being asserted in this case was raised in the state courts, which denied Plaintiff's request for relief.

Plaintiff alleges that Defendant commenced an action to obtain 90% of Plaintiff's assets as payment for his incarceration costs pursuant to the State Correctional Facility Reimbursement Act (SCFRA), Mich. Comp. Laws §§ 800.401, on March 29, 2019.  On May 30, 2019, a show cause hearing was scheduled in the Ingham County Circuit Court.  Plaintiff was notified at SRF that he would be attending by videoconference.  However, no connection by videoconference was ever made, so the court proceeded without input by Plaintiff, granting the State Treasurer 90% of Plaintiff's assets and issuing an order on May 30, 2019.  Plaintiff contends that he sent a letter on April 18, 2019, and objected prior to the hearing (ECF No.1-9, PageID.54–55), but the lower court and the attorney for the State Treasurer claimed that they never received a response from Plaintiff.  Plaintiff also sent correspondence on April 20, 2019, and June 8, 2019. (*Id.* at PageID.55–59).

The court issued an order dated June 4, 2019.  However, between June 20, 2019, and June 25, 2019, Circuit Court Judge Stokes rescinded her order and granted a show cause hearing on July 15, 2019.  By this time, the court's prior order had been distributed and the funds in Plaintiff's bank account had already been taken.

Plaintiff attaches a letter from TIAA (Teachers Insurance and Annuity Association) to Juandisha Harris with the Michigan Attorney General's office, dated July 12, 2019, regarding Plaintiff's retirement accounts.  (ECF No. 1-11.)  The letter explained that the fastest way to

withdraw, transfer, or rollover accumulations from TIAA Traditional is via a Transfer Payout

Annuity (TPA), which makes ten annual payments over nine years.  (*Id.*)  The letter indicated that

if the final order of the court instructed TIAA to begin the TPA process, the funds could be

distributed over a nine year period.  (*Id.*)  Plaintiff states that this letter completely bypassed him

and went directly to the State Treasurer in violation of his rights.  Plaintiff states that an involuntary

assignment of funds by the State under SCFRA is prohibited under ERISA.  Plaintiff claims that

the State Treasurer circumvented ERISA by ordering TIAA to send Plaintiff's retirement savings

to the State.

Plaintiff states that a hearing was conducted on July 15, 2019, and Plaintiff was

allowed to participate by videoconference.   However, Plaintiff claims that his explanations

regarding the financial needs of his son and wife were ignored by the court.  Plaintiff's son and

wife reside in Turkey.  Plaintiff's wife is mentally incapacitated and his son is living in foster care.

A letter from the Turkish Consulate in Chicago and an expense report for Plaintiff's son's care are

attached as exhibits to his complaint (ECF No. 1-8).  The court dismissed any consideration of

Plaintiff's financial obligations to his son and wife because there is no child support order.  Plaintiff

states that this is because he is still married to his wife and still has a moral and legal obligation to

provide support.   The court denied Plaintiff relief and issued a "Second Amended Final Order"

on July 15, 2019.

Plaintiff attaches a transcript of the July 15, 2019, hearing.  (ECF No. 1-10.)  During

the hearing, Assistant Attorney General Juandisha Harris stated:

> MS. HARRIS:  Okay.  We're here on the Court's order to show cause why
> Mr. Uraz should not reimburse the state for his cost of care in prison.  Mr. Uraz
> [has] 404B accounts with TIAA-CREF and bank accounts.  We are seeking 90
> percent of those assets to be applied toward his cost of care.

I did not get a copy of Mr. Uraz's, I believe it was his answer, I received after the Court's original order was entered.  And we also received a letter that was forwarded to us by the Court from I think the Turkish [Consulate] if I'm not mistaken.

THE COURT:  Yes.

MS. HARRIS:  They both address an issue with regards to a child that is in Turkey and I think that is the main concern in regards to the State's Act.  I would like to point out as we did address this on the record the last time because we were aware of not the answer but we were aware of the letter.  So we did address this on the record the last time.  I just wanted to reiterate the case of the Treasurer versus Sheko.  That is 218 Mich App 185 which does allow the Court to consider obligations to child support obligations but does not – but does not allow [them to be considered a]head of his statutory duty to reimburse the State for his cost of care.

Mr. Uraz has not shown that he has provided support for his child.  I don't know what his – if he even has a child support obligation by law but we have not seen that he has rights of his child and has no evidence presented to show that.  These funds have been in an account, and I believe he's been in prison for over a year now, these funds have been sitting in an account and [there has] not been an attempt to use them towards that support.  I believe that according to his answer, I thought I read that he wanted to apply some of that money towards future college expenses.  I believe it is still a minor child who is in the care of the foster care system in Turkey.  Michigan law does not obligate a parent to pay towards college expenses and that would not be a cost that would be borne over a reimbursement expense pursuant to law.

Mr. Uraz also brought up the issue of [ERISA].  This is a 403 B account.  And pursuant to the [SCFRA] Act which is a state, I'm sorry, it's a public retirement account, according to the [SCFRA] Act, the State does have a right to public pensions and that does take preceden[ce] over the State Law.  This is not protected by Federal Law.  This is not a 401(k) account.  I think that might be what the confusion is there.  So we are requesting that we have his assets.

(*Id*. at PageID.72–74.)

Plaintiff explained that he had previously tried to access the money in his accounts to send to his wife and son, but that he had been told that he could not touch the money because he was not old enough.  (*Id*. at PageID.74–75.)  Plaintiff further stated that his son had been placed in foster care because his wife had bipolar disorder and that he was the only one able to get his son out of foster care.  Plaintiff said that his sister was attempting to get the foster care system in

Turkey to write a letter explaining the situation in order to corroborate Plaintiff's explanation. (*Id.* at PageID.75.)

The court assured Plaintiff that his credibility was not at issue, but that in order to consider Plaintiff's claim, the court needed to have proof that Plaintiff had an obligation to pay for his son's support.  The court stated, "If he's no longer in the custody of you or your wife, you have to have some kind of order from somebody that says you are obligated to pay, pay a certain amount for your son's care." (*Id.* at PageID.76.)  At the conclusion of the hearing, the court authorized that 90% of Plaintiff's credit union account and 90% of his TIAA-CREF account be relinquished to the State. (*Id.* at PageID.85.)

Plaintiff further complains that under SCFRA (State Correctional Facility Reimbursement Act), he was supposed to receive 10% of the money paid out of his TIAA accounts, but that the State Treasurer received 100% of the first two TPAs.  Plaintiff raised this claim in the state court and on October 19, 2020, the State Treasurer stipulated an amendment to the July 24, 2019, final order to state that, upon TIAA making annual payments to the State for 90% of the asset, it shall also release the remaining 10% to Plaintiff. (*Id*. at PageID.120).

Plaintiff states that because he was proceeding without the assistance of an attorney, he became confused about the date that his appeal was due, which caused his appeal to be improperly dismissed for want of prosecution.  Plaintiff states that the final order of the circuit court was changed three times in 2019, but the court kept referring to the official date of the order as May 30, 2019.  However, Plaintiff states that this order was rescinded on June 24, 2019, and two other orders were subsequently issued, the latest one on July 24, 2019.  Finally, Plaintiff asserts that the October 19, 2020, amendment also confused the issue.  Because there were so many

amendments, Plaintiff was unsure of the deadline for filing an appeal, and believes that he was not late in doing so.

Plaintiff states that he sent his claim of appeal on June 24, 2019, which is the same day that the first order was rescinded. *State Treasurer v. Tunc Uraz*, Michigan Court of Appeals No. 349487. On October 17, 2019, the Michigan Court of Appeals issued an order stating that it would treat Plaintiff's claim of appeal as a delayed application for leave to appeal. *Id.* Plaintiff was ordered to file a brief in support of the delayed application and a proof of service on appellee's counsel within 56 days. *Id.* Plaintiff was warned that failure to comply with the order may result in a dismissal of his appeal. *Id.* On January 15, 2020, Plaintiff's appeal was dismissed for want of prosecution because he failed to file a brief in support of his delayed application for leave to appeal. *Id.* Plaintiff's request for reinstatment was denied on February 14, 2020. *Id.*

Plaintiff filed an appeal in the Michigan Supreme Court on March 23, 2020. *State Treasurer v. Tunc Uraz*, Michigan Supreme Court No. 161163. Plaintiff's appeal was dismissed by the Michigan Supreme Court on June 30, 2020, and his request for reconsideration was denied on September 29, 2020. *Id.*

Plaintiff now seeks to have this Court reverse the holdings of the state courts in this case. Specifically, Plaintiff seeks to have the funds taken by the State Treasurer refunded and sent to his power of attorney, Mr. Ali Emrah Kocak.

II.   **Frivolousness**

An action may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brown v. Bargery*, 207 F.3d 863, 866 (2000); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable

6

or rational basis in fact describe fantastic or delusional scenarios.  *Neitzke*, 490 U.S. at 327–28;

*Lawler*, 898 F.2d at 1199.

III.    **Rooker-Feldman**

As noted above, Plaintiff is complaining of the results of a state court action by the

State Treasurer pursuant to SCFRA to attach his retirement accounts to pay for the cost of his

incarceration.  A doctrine known as *Rooker-Feldman* limits this Court's jurisdiction to adjudicate

appeals from or collateral attacks on state-court rulings.  *See Rooker v. Fidelity Trust Co.*, 263 U.S.

413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

"The *Rooker-Feldman* doctrine embodies the notion that appellate review of state-court decisions

and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C.

§ 1257, and thus that federal district courts lack jurisdiction to review such matters." *In re Cook*,

551 F.3d 542, 548 (6th Cir. 2009).  The *Rooker-Feldman* doctrine applies to cases "brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005).  "The

pertinent question in determining whether a federal district court is precluded under the *Rooker-*

*Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the 'source

of the injury' upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*,

551 F.3d at 548.

The Sixth Circuit has specifically held that a prisoner's claim that the state used

SCFRA to convert pension benefits in violation of ERISA is barred by *Rooker-Feldman* and res

judicata.  *Abbott v. State of Michigan*, 474 F.3d 324 (6th Cir. 2007).  In *Abbott*, state inmates

argued that state court SCFRA orders requiring that a portion of their pension payments be directed

to the MDOC violated the Due Process Clause, ERISA, and state law.  *Id.* at 327.  In addressing

the application of *Rooker-Feldman*, the Sixth Circuit stated:

> Regarding whether plaintiffs' claims of specific injuries that they have suffered implicate the *Rooker-Feldman* doctrine, we have found the Second Circuit's guidance particularly instructive:
>
>> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son.  If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.  This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.
>>
>> . . . . Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses.  If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment.  Instead, he will be alleging injury based on the employer's discrimination.  The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.
>
> *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 87–88 (2d Cir.2005) (quoted in McCormick, 451 F.3d at 394).  Importantly, "there are certain exceptions to this rule of thumb.  For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions [is] in fact a challenge to the judgment itself." *McCormick,* 451 F.3d at 394.
>
> In this case, the plaintiffs are ostensibly complaining of injuries caused by the actions of third parties—the conversion of their pension benefits by state officials—but those actions were the direct and immediate products of the state-court SCFRA judgments.  The plaintiffs' claims and arguments make this clear:  They assert that the state courts erred in issuing the SCFRA judgments and do not claim that the defendants have injured them in any way except by strictly executing those judgments.  Accordingly, the plaintiffs' claims of specific injuries that they have suffered are actually challenges to the state-court SCFRA judgments and are barred by the *Rooker-Feldman* doctrine.

*Abbott v. Michigan*, 474 F.3d 324, 328–29 (6th Cir. 2007).

8

In this case, as in *Abbott*, Plaintiff's asserted injury is the direct result of a state court judgment. Therefore, the Court concludes that Plaintiff's claims are barred by *Rooker-Feldman*, and the Court therefore lacks jurisdiction to hear his claim.

A Court may dismiss a case as frivolous if "there is 'no possible ground upon which a reasoned argument can be made to sustain [] jurisdiction.'" *Cohen v. Corr. Corp. of Am.*, 439 F. App'x 489, 492 (6th Cir. 2011) (quoting *De La Garza v. De La Garza*, 91 F. App'x 508, 509 (7th Cir. 2004)); *see also Eidam v. Kent Cnty.*, No. 1:20-cv-538, 2020 WL 5087880, at *3 (W.D. Mich. Aug. 28, 2020). In the instant case, where Plaintiff merely attempts to relitigate issues already fully litigated in the state courts, no reasoned argument exists for sustaining jurisdiction. The Court therefore finds that the action must be dismissed as frivolous.

## IV.    Res judicata

Even if the *Rooker*-Feldman doctrine did not bar this Court's exercise of jurisdiction, Plaintiff's claims would be barred by res judicata. The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); *see Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

In *Abbott*, the Court noted that "federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Id.* at 330. The Court

observed that Michigan recognizes claim preclusion, and concluded that it applied to bar the

plaintiffs' claims in that case. *Id.* at 330-31.

> Claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State,* 470 Mich. 105, 680 N.W.2d 386, 396 (Mich. 2004). Claim preclusion "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Baraga County v. State Tax Comm'n,* 466 Mich. 264, 645 N.W.2d 13, 16 (Mich. 2002).
>
> The Supreme Court has held, however, that as a matter of federal law, "res judicata principles do not apply 'where the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.'" *Fellowship of Christ Church v. Thorburn,* 758 F.2d 1140, 1144 (6th Cir. 1985) (quoting *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). As a constitutional minimum, the state-court proceedings must "satisfy the applicable requirements of the Due Process Clause" in order for their decisions to warrant preclusive effect. *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 482, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982). Due process generally requires "notice and an opportunity to respond." *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

*Abbott*, 474 F.3d at 330–31 (6th Cir. 2007) (footnotes omitted).

Because it is clear from the record in this case that Plaintiff had the opportunity to

present his claims to the state court and did so during the hearing on July 15, 2019, Plaintiff cannot

show that he was deprived of due process. In addition, the state court ruled against Plaintiff on the

merits of his claim that he had a superseding obligation to financially support his wife and son.

The claims presented and the parties involved are identical in the state court case and in the instant

case. Therefore, Plaintiff's claims are barred by res judicata. An action that is barred by res

judicata is legally frivolous. *See, e.g., Taylor v. Reynolds*, 22 F. App'x 537, 538 (6th Cir. 2001);

*Hill v. Elting*, 9 F. App'x 321 (6th Cir. 2001).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed as frivolous, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 9, 2021                          /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge